Philadelphia,
Monday,
March 26.

MILLER and others assignees of JOHN PINKERTON, a bankrupt, *against* ORD executor of ORD.

Where the principal assigns a fund to trustees to pay a creditor whom *the surety* afterwards pays, and the proceeds of the fund are then paid over by the trustees, the surety is entitled to the benefit of the fund, and may recover it from the person who possesses it, in an action for money had and received in his own name.

*INDEBITATUS assumpsit* for money had and received by the defendant, for the use of the plaintiffs as assignees.

Upon the trial of this cause before the Chief Justice, at the Nisi Prius preceding the present term, the following facts were in evidence.

In the year 1797 *David Pinkerton* was imprisoned for a debt due to the *United States. Andrew Kennedy*, and the house of *Jones* and *Clark*, came forward to assist him, and issued each a note for 1172 dollars 77 cents, which was applied to his relief, and was afterwards paid and taken up by the drawer. *Kennedy* had received a promise of indemnity from *John Pinkerton*, the father of *David*, before he issued the note. *David Pinkerton*, who had a vessel and cargo ready for sea at the time of his imprisonment, conveyed the vessel to *Jones* and *Clark*, and the cargo to *Jones* and *Clark* and *Kennedy*, in trust that the proceeds should be applied, in the first place to repay the amount of the notes, and of some other debts due from him to *Jones* and *Clark* and *Kennedy*, and the surplus, if any, to be returned to him. The vessel and cargo were sent to sea, insurance having been effected by *Jones* and *Clark* who conducted the business. They were both lost on the homeward voyage. The underwriters refused payment, and the money was recovered of them in *April* 1803. In the mean time, in *July* 1802, *John Pinkerton* had satisfied *Kennedy* for the note drawn by him, according to his engagement. In *November* 1802, *John Pinkerton* became a bankrupt. Very soon after the money came to the hands of *Jones* and *Clark*, they paid *Kennedy* the amount of his demand against *David Pinkerton*, exclusive of

the note which had been satisfied by *John*, and retaining in their hands, the amount of their own claim, they paid the surplus to *George Ord* the administrator of *David Pinkerton*, who was then dead. In a few days after *Ord* had received the money, the plaintiffs demanded it of him as belonging to the estate of the bankrupt, and upon his refusal to pay, this action was brought. *Ord* died during the pendency of the suit, and the defendant was substituted as his executor.

On the trial, it was contended, that if the plaintiffs were entitled to the money, the suit should have been brought in the name of *Andrew Kennedy* for their use; and this point was reserved by the Chief Justice. The jury found for the plaintiffs.

*Hare* and *Condy* for the plaintiffs. The action could not be brought in *Kennedy's* name for various reasons. First, because *Kennedy* had not even a legal right to the fund, as his debt was satisfied, and the surplus paid over with his knowledge to *Ord*. As to him the trust was extinguished. Secondly, because we do not claim under him, or as assignees of the contract made with him; but in our own right, as being equitably entitled to the fund, which our payment as surety has liberated. Again, because in an action by *Kennedy*, the recovery must be upon his case, and not upon our own; and as we have no assignment or transfer from him, the recovery would not enure to our use. That we are entitled to sue in our own name, will be seen by examining how we are entitled. *Ord*, not as administrator, because his intestate had no title, but as a stranger, received a fund destined for the payment of *Kennedy*, which fund was released by *John Pinkerton's* payment as surety. *John Pinkerton* had previously become bankrupt, and his assignees stood in his place. We are as surety, entitled to the benefit of all the securities which the principal has given. *Parsons* v. *Briddock* (a), *Ex parte Rushbrook* (b), 1 *Eq. Abr.* 93. Not by virtue of the contract between the principal and creditor, but by our own equity, and the implied contract between the principal and us. If we had a court of Chancery, surely we might have a bill in equity; and an action for money had

(a) 2 *Vern.* 608.　　　(b) 10 *Ves. jr.* 422.

and received, is in the nature of a bill, and should be liberally extended. It is the very form of action to reach a fund, out of which we are entitled to be paid. If *David Pinkerton* had received the fund, it would in equity have been money received to our use. It is the same with *Ord.* We are the equitable *cestuy que trust* of the fund; and we are therefore the only persons who can bring the action, and this is the only form. It was upon this principle that the indorsee of a bill drawn to a fictitious payee, recovered in money had and, received against the acceptor. *Tatlock* v. *Harris* (*a*). He was entitled to the fund. To the same effect is *Fenner* v. *Mears* (*b*). In many cases, to avoid the inconvenience of the rule that a chose in action cannot be assigned, this form of action has been supported in the name of the party having the equitable interest. *Israel* v. *Douglass* (*c*). We are however clear of the doctrine of choses in action. If we had wanted an assignment of the trust deed, equity would not have decreed it, because, as we could not sue upon it, it would be useless. *Gammon* v. *Stone* (*d*), *Woffington* v. *Sparks* (*e*). We stand in the situation of a surety who has paid the bond of his principal. He cannot sue in the name of the obligee, but he has his action against the principal for money paid, or money had and received to get possession of the fund which is his security.

*Dallas* for the defendant. There are two objections to the plaintiffs' recovering. First, because *John Pinkerton* was the voluntary surety of *David*, without the request, or the knowledge of the latter; and no action at all lies by the surety in such a case. He has no equity, since no man has a right to make himself the creditor of another, against the other's will. Secondly, because to enforce an equitable claim upon securities, the party, when he goes into chancery, must set out all his case upon the bill, and when he goes into a court of law, he must state his derivative title upon the declaration; that is, he must bring an action on the case. The form of action is intimately connected with the merits. A bill in equity would apprize the defendant of the whole of the plaintiffs' case; the common law form should be made to do the same. There

(*a*) 3 *D. & E.* 174.      (*c*) 1 *H. Bl.* 242.      (*e*) 2 *Ves.* 569.
(*b*) 2 *W. Black.* 1269.      (*d*) 1 *Ves.* 389.

would be otherwise inevitable surprise, and all forms of action would coalesce. There can be no doubt that the plaintiffs must claim under the assignment, because they can claim in no other way. *John Pinkerton* could not have sued *David*, because he was not asked to become his surety. The assignees of *John* are in no better situation. The only chance they have, is by taking *Kennedy's* place under the assignment, and then most certainly they must, as the assignees of a chose in action, sue in his name. It is true that a surety has a right to the creditor's security; but *Kennedy* was himself the surety of *David*, and there is no instance in which the surety of a surety is entitled to the surety's security. At least he can have it in no way, but by an implied assignment, and then he must use the name of his assignor. If the fund had been set apart expressly for *John Pinkerton's* use, or if the property had been assigned to *Kennedy* or his order, the plaintiffs might possibly sue in their own name. But that is not the case. They claim derivatively the benefit of a chose in action, and this should appear upon the record. Nothing but this precaution will prevent the plaintiffs from suing the representative of *David Pinkerton* a second time, to recover the money as having been paid for his use. All the cases cited, turned upon a positive contract by the holder of the fund to pay to the plaintiff as assignee, and therefore money had and received would lie. Here there was no contract whatever with the plaintiffs; they stand as the representatives of the assignee.

In reply it was said, that the right of the plaintiffs to recover, was no part of the point reserved. That was settled by the jury. The only question was as to the necessity of using *Kennedy's* name.

TILGHMAN C. J. after stating the facts, delivered the court's opinion.

The argument in this court has taken a wider range than the point reserved, and reasons have been urged to shew, that on the general merits of the case, the plaintiffs are not entitled to the money. Although this point, in strictness, is not open, yet the court have no hesitation in declaring their opinion, that *John Pinkerton*, having paid the amount of

VOL. II.                              3 C

the note drawn by *Andrew Kennedy*, was entitled in equity' to stand in *Kennedy's* place, and have the same relief from the fund pledged for the payment of that note, as *Kennedy* himself might have had. This principle is highly reasonable, and sufficiently established by the cases cited by the plaintiffs' counsel. Let us consider then what objection can be made to the form of action. It is said that a chose in action is not assignable, and that the suit should have been in the name of *Andrew Kennedy*. But this action is by no means founded on the assignment of a chose in action. It is not founded on the deed by which *David Pinkerton* conveyed the vessel and cargo to *Jones* and *Clark* and *Andrew Kennedy*, but on an original right vested in *John Pinkerton*, in consequence of his having taken up a note for which this cargo was pledged. It bears no resemblance to an action by the assignee of a bond, where the cause of action is founded solely on the bond. Besides, to put the matter out of all doubt, if the action cannot be supported in the name of the plaintiffs, it cannot be supported at all; for in the name of *Kennedy* no action will lie. He has no claim on this fund, having already received full payment of all his demand, and the surplus was paid over by his consent. Another objection was, that this action was too general, and gave the defendant no notice of the plaintiffs' real claim, and therefore he should have brought a special action on the case. But this objection has no more weight in the present instance, than in a thousand others, in which this kind of action has been allowed to be well brought. It is an objection to the form of action in general, which in its nature is not calculated to give special notice of the plaintiffs' claim. But to remedy this inconvenience, the court will take care to protect the defendant from surprise. He may call on the plaintiff to specify the nature of his demand, and until that is done, the trial will be postponed. By this precaution, we are enabled to preserve a form of action, well calculated for the recovery of *equitable* demands, without injury to the defendant; and in this state, where there is no court of chancery, we are bound to encourage those forms of action by which equity may be attained.

On the whole, the court are of opinion that the plaintiffs' action is well supported by the evidence.

Judgment for plaintiffs.