THE NEW-LONDON BANK and THE UNION BANK *against* LEE and others.

The security for a debt, in whose hands soever it may be, is a fund held in trust for the payment of such debt: if in the hands of the creditor, the surety, having paid the debt, may call for it to indemnify himself; if in the hands of the surety, the creditor may resort to it for the satisfaction of his debt.

And it makes no difference, in this respect, whether the security consist of personal or real estate.

Though where several interests are concerned, a court of equity will in general require all parties interested to be made parties, either as plaintiffs or defendants; yet where the matter in controversy is of general interest to many creditors, some of them may sue, in a court of equity, in behalf of themselves and the others.

After an answer to the bill and the appointment and report of a committee, the court will not dismiss the bill for want of additional parties, though necessary, but will direct it to stand over, that they may be added.

To defeat a bill in chancery on the ground that there is adequate remedy at law, the remedy at law must be clear and complete.

Therefore, where a creditor sought, by a bill in chancery, the application of securities in the hands of a surety to the satisfaction of his debt; and it appeared that such securities consisted of mortgages in this state and *Ohio*, of all the debtor's estate, given to indemnify the surety against unpaid debts, which mortgages were subject to prior incumbrances; it was held, that the remedy at law by execution was inadequate.

THIS was a bill in chancery.

The material facts stated in the bill and found by the committee, were the following. The defendants, *Henry S. Lee* and *Samuel H. P. Lee*, jr., manufacturers in company under the firm of *H. & S. Lee*, in the summer and autumn of 1832, made five promissory notes, payable at the *New-London Bank*, to the order of *Samuel H. P. Lee*, also one of the defendants, which notes were endorsed by him, and were transferred to and discounted by the *New-London Bank*, for the benefit of *H. & S. Lee*. They also made three other promissory notes, payable at the *Union Bank*, to the order of *Samuel H. P. Lee*, which were also endorsed by him, and were transferred to and discounted by the *Union Bank*, for the use of the makers.

When these notes severally became due, payment thereof was demanded by the holders; but *H. & S. Lee* neglected to pay them, or any part thereof; and legal notice was given to the endorser. At the time these notes were discounted, *H. &*

*S. Lee* were the owners and in possession of two undivided third parts of certain real estate in *East-Haddam*, with a brick cotton factory, saw-mill, store, dwelling-houses and other buildings thereon, together with the machinery used in the factory for the purpose of manufacturing cotton cloth. At the same time, *Samuel H. P. Lee* was the owner of one undivided third part of said real estate in *East-Haddam*, and was also the owner and in possession of valuable real estate in *New-London* and elsewhere, and was in good credit; but whether he was of ability to pay all said notes and his other debts, did not appear.

In *May*, 1827, *Samuel H. P. Lee*, *Henry S. Lee* and *Samuel H. P. Lee, jr.*, were indebted to the State of *Connecticut*, for the use of the school fund, in the sum of 15,210 dollars; and to secure the payment thereof, and the interest annually, they mortgaged all their real estate in *East-Haddam*, and all the real estate of *Samuel H. P. Lee* in *New-London*, except his mansion house and the lot opposite thereto, together with certain real estate of his in the town of *Lyme*. To secure the same debt of 15,210 dollars, *Samuel H. P. Lee* and *Elizabeth Lee*, at the same time, mortgaged to the state of *Connecticut*, 1882 acres of land in the town of *Groton*, in the county of *Huron*, and state of *Ohio*.

In *December*, 1829, *Samuel H. P. Lee* mortgaged his mansion house and the lot opposite thereto, to *Jonathan Coit* and others, to secure a promissory note for 4,800 dollars, made by him, and payable to them or order, at the *New-London Bank*, six months after date; which note was by them endorsed. In *October*, 1832, *Samuel H. P. Lee* mortgaged to *John Hallam* and *Jonathan Coit*, his mansion house and the lot opposite thereto, to secure the payment of two promissory notes of 1000 dollars each, made by him, and payable at the *Phoenix Bank* in *Westerly*, one to said *Hallam* or order, and one to said *Coit* or order, and by them severally endorsed, at his request and for his benefit.

It did not appear that any part of the debt due to the state of *Connecticut* had been paid.

In *November*, 1833, the mortgage given to *Jonathan Coit* and others, was assigned, by the mortgagees, to said *Coit* and *Edward Hallam*; *Samuel H. P. Lee* having failed to pay said note of 4,800 dollars, and having also failed to pay said

two notes of 1000 dollars each.   These assignees having been compelled to  pay such  notes,  obtained a decree of foreclosure against said *Lee* of his equity of  redemption ; which  foreclosure took effect on the first *Monday* of *August,* 1834.

*Samuel H. P. Lee* has remained in possession of  all the real estate so mortgaged by him, situated in *New-London,* for a long time  prior to  the date of  the first mortgage, except the mansion house and the lot  opposite so foreclosed, from which he has been removed since the first *Monday* of *August,* 1834. The value of  his real  estate in  *New-London,* other than  the mansion house and the lot opposite, exceeds 7000 dollars.

On the 6th of *October,* 1832, before either of the notes payable at the *New-London* and  *Union  Banks* became  due, *H. & S. Lee* mortgaged to *Samuel H. P. Lee,*  all their right, title and interest  in said  real  estate  in  *East-Haddam,* and all the machinery ; to secure the mortgagee for his endorsement of three promissory notes and his acceptance of twenty-one drafts or bills of  exchange,  on their  account  and  for  their  benefit, amounting to 23,969 dollars, 24 cents ; to secure also a debt of 3000 dollars due from them to him on book.

After the notes held by the present plaintiffs became due, they instituted suits thereon, and in *February,* 1833, recovered judgments against the  makers  and  endorser  respectively,  for the sums due thereon and costs of suit ; in which suits all the property of *H. & S. Lee* in  *East-Haddam,* was attached.    Executions were taken out, by the  plaintiffs, for  the  several sums so recovered for debt and costs, and were  returned  wholly unsatisfied, for want of estate of  the debtors on which they  could be levied, except what was so encumbered by said mortgages.

*Henry S. Lee* and *Samuel H. P. Lee, jr.* are, and each of them is, insolvent.    They are in possession of  the property  in *East-Haddam,* so mortgaged by them to *Samuel H. P. Lee,* which is of great value, and are receiving the rents and profits thereof, which are also of great value ;  and they neglect to pay the debts due to  the  plaintiffs, or any part of them ;  and  also neglect to pay any of  the  notes and drafts mentioned in the mortgage deed by them given to  *Samuel H. P. Lee ;* but retain possession of the mortgaged premises, for their own benefit, or the benefit of *Samuel H. P. Lee,* who neglects and refuses to pay the debts due  to the plaintiffs, and refuses to permit the plaintiffs to have the  benefit of  the real or  personal estate  so

New-London,
July, 1835.

New-London
Bank
v.
Lee.

mortgaged to him, either by selling it and applying the proceeds thereof towards the payment of such debts, or by applying the rents and profits thereto; and refuses to assign said estate, or any part thereof, to the plaintiffs, or to others who are holders of the drafts and notes mentioned in said mortgage deed, in payment thereof, although he was particularly requested so to do, on the 31st of *July*, 1833, by the plaintiffs and others, holders of said drafts and notes. All the notes and drafts mentioned in the mortgage deed of *H. & S. Lee* to *Samuel H. P. Lee*, were duly presented for payment, and were dishonoured; of which due notice was given to all persons entitled to such notice.

On the hearing before the committee, the defendant, *Samuel H. P. Lee*, exhibited sundry accounts current, under the hands of *H. & S. Lee* and himself, purporting to be monthly accounts current between them, as adjusted by them; by which *H. & S. Lee* acknowledge a balance against them in favour of *Samuel H. P. Lee*, on the 20th of *June*, 1834, of 33,469 dollars, 22 cents; of which balance the drafts and acceptances aforesaid to the amount of 14,793 dollars, 18 cents, constituted a part; which drafts and acceptances being paid by *H. & S. Lee*, or by their property, a balance would remain against them in favour of *Samuel H. P. Lee*, of 18,676 dollars, 64 cents.

The bill prayed the court to order and decree, that said *Lees* should convey to the plaintiffs said mortgaged property, or such part thereof as the plaintiffs might in equity be entitled to; or that it should be sold, by some meet person, to be appointed for that purpose, and the avails thereof applied towards the payment of the debts for the security of which the property had been mortgaged. There was also a general prayer for relief. *Samuel H. P. Lee*, and the creditors of *H. & S. Lee*, named in the mortgage, other than the plaintiffs, were cited in as defendants.

The case was reserved for the advice of the judges of this court, on the question whether any, and if any, what decree should be passed.

*Strong* and *W. P. Cleaveland*, jun., for the plaintiffs, contended, 1. That the debtors having placed their property in such a situation that no one creditor can levy his execution upon it, a court of equity will interfere for the relief of creditors

thus situated. The plaintiffs have done all in their power to acquire a lien. *Hendricks* v. *Robinson* & al. 2 *Johns. Ch. Rep.* 283. *Brinkerhoff* v. *Brown* & al. 4 *Johns. Ch. Rep.* 671. *Williams* v. *Brown* & al. 4 *Johns. Ch. Rep.* 682. *McDermutt* & al. v. *Strong* & al. 4 *Johns. Ch. Rep.* 687.

2. That in chancery, the creditors are entitled to the benefit of all the securities given by the principal to his sureties. *Homer* & al. v. *The Savings Bank of New-Haven*, 7 *Conn. Rep.* 478. *Maure* v. *Harrison*, 1 *Eq. Ca. Abr.* 93. *Russell* v. *Clark's* exrs. & al. 7 *Cranch* 69. *Moses* & al. v. *Murgatroyd* & al. 1 *Johns. Ch. Rep.* 119. 129. *Kip* v. *The Bank of New-York*, 10 *Johns. Rep.* 63. 65. *Phillips* v. *Thompson*, 2 *Johns. Ch. Rep.* 418. 422. *Wright* v. *Morley*, 11 *Ves.* 12. 22. *Craythorne* v. *Swinburne*, 14 *Ves.* 162. *Samuel H. P. Lee* is a *trustee* for the payment of the debts for which the property was mortgaged. *Theobald*, 252, 3.

*Goddard* and *Isham*, for the defendants, contended, 1. That the plaintiffs had no right to take *Samuel H. P. Lee's* security out of his hands.

In the first place, the doctrine claimed by the plaintiffs has never been decided in this state. It is a *new* question here. This point was not decided in *Homer* v. *Savings Bank ;* nor was it necessary ; for admitting the whole ground, the bill could not be sustained, and was dismissed. It is a decision of two judges only. In 1825, the superior court in *New-Haven* county, decided against the doctrine of *Maure* v. *Harrison*. *Clark* & al. v. *Miner* & al. cited 7 *Conn. Rep.* 483.

But secondly, admitting the correctness of the opinion intimated in *Homer* v. *The Savings Bank*, this bill cannot be sustained on the ground laid down by the court, at *p.* 484, 5. Was this conveyance made to *Samuel H. P. Lee* for the *better protection* or *payment* of the debts of the creditors of *H. & S. Lee?* Does it appear from the instrument itself, that such was *the intent of the transaction?* In all the decided cases, the security was given *at the time the debts arose.* The security in this case is as much *personal* to *Samuel H. P. Lee,* and for *his indemnity only*, as the assignment to *Holly*, which was held to be personal.

Thirdly, the general doctrine, in *England* and elsewhere, as well as in *Connecticut*, is at least of doubtful authority.

*Maure* v. *Harrison* is a solitary case, not even referred to, in any subsequent case in *England.* For the decision in *Moses* v. *Murgatroyd* & al. the case of *Maure* v. *Harrison* is the only authority. No such general principle is to be drawn from the case of *Phillips* v. *Thompson.* The judgment was taken by *Bronson,* and assigned to the defendant, as a satisfaction of the note, which the defendant, as prior indorser, had paid. In *Kip* v. *The Bank of New-York, personal* property was held *in trust ;* and the court said, that the *cestui que trust* should have it. The same principle was decided in *Russel* v. *Clark's* exrs. In all these cases, the fund was *personal* property, and so situated that it could not be come at, but in chancery.

2. That the fund in this case being *real* estate, the plaintiffs have complete remedy at law. An equity of redemption is attachable, and may be taken by execution.

3. That the plaintiffs are not entitled to relief on the ground of fraud ; for there is no fraud alleged or found as to the conveyance to *Samuel H. P. Lee.*

4. That the plaintiffs cannot sustain this bill, because the other creditors whose interests are to be affected by the decree, do not join in bringing the suit. There should be at least an averment that those creditors refuse to join. *West* v. *Randall* & al. 2 *Mason* 181. 1 *U. S. Cond. Rep.* 507. *in notis.*

*Rockwell,* for *H. Waldo & Co.,* creditors of *H. & S. Lee,* as holders of bills to the amount of 2,200 dollars, drawn by *H. & S. Lee* on *Samuel H. P. Lee,* and by him accepted, contended, That courts of equity regard the conveyance of property for the security of a debt as creating a *trust* in the person receiving the conveyance, and will enforce the application of the property to the satisfaction of the debt, in the most advantageous manner for all interested. In support of this general proposition, he contended, more particularly,

1. That where a party has two funds, his choice shall not have the effect of disappointing another who has only one, but the latter shall stand in the place of the former. *Trimmer* v. *Bayne,* 9 *Ves.* 209. *Austen* v. *Halsey,* 6 *Ves.* 475. 483. *Aldrich* v. *Cooper,* 8 *Ves.* 382. 388. 391. *Cheesebrough* & al. v. *Millard* & al. 1 *Johns. Ch. Rep.* 409. 412. *Burrows* & al. v. *McWhann* & al. 1 *Des. Ch. Rep.* 409. 1 *Madd. Chan.* 250, 1.

2. That a surety is entitled to any remedy, which the creditor had against the principal debtor. 1 *Madd. Chan.* 235, 6. *Craythorne* v. *Swinburne*, 14 *Ves.* 162. *Mayhew* v. *Crickett* & al. 2 *Swanst.* 184. 191. *Wade* v. *Coope*, 2 *Sim.* 155. *Hayes* v. *Ward* & al. 4 *Johns. Ch. Rep.* 123. 129, 30. *Clason* v. *Morris*, 10 *Johns. Rep.* 524. 539.

3. That where property for the security of the surety is conveyed to him, by the principal debtor, the creditor is entitled to the benefit of this security, and to have the property applied for the payment of the debt. [Here the authorities cited by the plaintiffs' counsel to the same point, were referred to.]

CHURCH, J. That the debts of the plaintiffs are justly due, and such as the defendants, *H. & S. Lee*, are bound, as well at law as in conscience, to pay, is undisputed; and the important question is, whether the remedy sought is such as a court of equity will apply.

The original debtors, *H. & S. Lee*, by their mortgage deed to *Samuel H. P. Lee*, of 16th of *October*, 1832, made to indemnify him against these demands of the plaintiffs, as well as against the claims of others, as averred in the bill, and described in the condition of said mortgaged deed, appropriated the estate thus described *as a fund*, to secure the payment of the several debts there mentioned. This fund has never been applied to its object; the debts remain unpaid; and the purpose of the bill is, to enforce the application of the fund.

The principles upon which the plaintiffs, in their present application, rely, in support of the remedy they seek to enforce, are familiar to courts of equity. Does the present case fall within their operation?

It has long been settled, and is conceded in argument here, that a surety who has paid the debt, may well claim all the funds appropriated for its payment remaining in the hands of the creditors. The plaintiffs insist, that the same reasons and equities apply, with equal strength, to their case, wherein they, as creditors, seek to apply the funds in the hands of the surety to the payment of the debts. And so we think. In both cases, the security or fund is created for the payment of the debt, and is a trust existing for that specific purpose; and whether the creditor, as in the former case, or the surety, as in this, be the trustee, is very immaterial. The trust is created, ultimately,

for the benefit of the creditor, or of him who stands in his place, by having paid the debt. *Mayhew* v. *Crickett,* 2 *Swanst.* 191. Ex partee *Gee,* 1 *Glyn & Jameson,* 330. *King* v. *Baldwin* & al. 2 *Johns. Ch. Rep.* 554. 2 *Sw. Dig.* 151. *Wright* v. *Morley,* 11 *Ves.* 12. 1 *Law Library* 150. *Miller* & al. v. *Ord,* 2 *Binn.* 382. And this principle has been frequently applied to cases like the present. It was holden, more than a century ago, in the case of *Maure* v. *Harrison,* 1 *Eq. Cas. Abr.* 93. that a bond creditor shall have the benefit of all counterbonds or collateral securities given by the debtor to the surety. And this principle has ever since been recognised as elementary in courts of equity. The cases on this subject are all collected and well considered, by *Bissell.* J., in the case of *Homer* v. *Savings Bank of New-Haven,* 7 *Conn. Rep.* 478; and they entirely establish the general doctrine for which the plaintiffs contend; and their authority this court recognises. Nor are they to be distinguished from the present case, because they are conversant about personal, and not real, estate. *Russell* v. *Clark's* executors, 7 *Cranch* 69. *Moses* v. *Murgatroyd* & al. 1 *Johns. Chan. Rep.* 119. *Phillips* v. *Thompson,* 2 *Johns. Chan. Rep.* 418. *Kip* v. *Bank of New-York,* 10 *Johns. Rep.* 63. 65. *Wright* v. *Morley,* 11 *Ves.* 21. *Craythorne* v. *Swinburne,* 14 *Ves.* 162. 1 *Law Library* 150.

But the defendants contend, that if the general doctrine, as applicable to cases of the general character of the present, be conceded, as claimed by the plaintiffs, yet, in this case, special objections exist against any recovery by them under this bill. And,

1. That the other creditors of *H. & S. Lee,* against whose demands *Samuel H P. Lee* was also indemnified, by the same mortgage of *October,* 16th, 1832, are not made parties plaintiffs in this case; and no reason is assigned why they are not. The interest of the several creditors named in the aforesaid mortgage, although similar, is not joint; and no one of these creditors can act for the others, without their consent. The remedy sought by this bill is, essentially, as well for the benefit of these other creditors, as for these plaintiffs; and the bill, though not in form, is, in substance, as well in their behalf, as in behalf of the plaintiffs. Its prayer is, that the property mortgaged be sold, and the avails applied to the payment of

the debts for which it was pledged ; and the cases are very frequent, in which it has been holden, that where a question in controversy is of general interest to many creditors, some may, in a court of equity, sue in behalf of themselves and the others. *Mit. 1 l.* 224. *Elmendorf* v. *Taylor* & al. 10 *Wheat.* 152.    *West* v. *Randall,* 2 *Mason* 181.   1 *Cond. U. S. Rep.* 507. *in notis. Routh* v. *Kinder,* 3 *Swanst.* 144. *Boddy* & al. v. *Kent* & al. 1 *Meriv.* 361.    *Weld* v. *Bonham,* 2 *Sim. & Stu.* 91.   *Hanford* v. *Storie,* 2 *Sim. & Stu.* 196. *Lloyd* v. *Loaring,* 6 *Ves.* 779.   *Brown* v. *Ricketts* & al. 3 *Johns. Chan. Rep.* 553.   *Hallett* v. *Hallett,* 2 *Paige* 15.

In cases where several individuals and interests are concerned, a court of equity will in general require all parties interested to be made parties in a proceeding affecting such interests, either as plaintiffs or defendants, for the purpose of preventing further and unnecessary litigation, as well also that a decree may be formed, which shall be safe for all who are bound to perform it.   But even this rule is subject to the discretion of the court.   *Elmendorf* v. *Taylor,* 10 *Wheat.* 152. *Mallow* & al. v. *Hinde,* 12 *Wheat.* 193. *Mit. Pl.* 164. And in this case, the other creditors are parties, though not plaintiffs : they are before the court, and may be bound by any decree which may be made, as well as if they had been joint plaintiffs with the present plaintiffs, or as well as if they had been called in, as is frequently necessary, by order of court, during the progress of the proceedings. *Mit. Pl.* 11. 164. *Hendricks* v. *Robinson* & al. 2 *Johns. Chan. Rep.* 283.

Besides, it may well be doubted, whether an objection for want of all the proper parties, should be permitted at this stage of the cause.   An answer has been made to the bill ; a committee appointed ; and that committee has made its report of the facts in the case ; after which, for the *first time,* this objection is interposed.   The court will not dismiss the bill, even if it should believe more parties to be necessary, but would direct it to stand over that they might be added.   After all the expenses of this litigation have been incurred, it would be unreasonable to make such order ; and indeed, the defendants have not requested it.   Upon every consideration, therefore, this objection for want of parties, is unsustainable.   *Russell* & al. v. *Green,* 10 *Conn. Rep.* 269. *Nash* v. *Smith* & al. 6 *Conn. Rep.* 421.

*Anon.* 2 *Atk.* 15. *Jones* v. *Jones,* 3 *Atk.* 111. *Harding* v. *Handy,* 11 *Wheat.* 103.

2. That the plaintiffs have adequate remedy at law. To render this objection available, it must be shewn, that the pretended remedy at law is clear and complete. *Mit. Pl.* 25. *in notis.* (*Am.* ed.) *Weymouth* v. *Boyer,* 1 *Ves. jr.* 416. *Rathbone* v. *Warren,* 10 *Johns. Rep.* 587. *King* v. *Baldwin,* 17 *Johns. Rep.* 384. The supreme court of the *United States,* in discussing this subject, in the case of *Boyce's* exr. v. *Grundy,* 3 *Peters* 215. say : "It is not enough that there is a remedy at law ; it must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity." If, in the present case, the court could even see, that the plaintiffs have a nominal remedy at law, by levying their executions upon an equity of redemption of some probable and yet unascertainable value ; yet, if we believe, that such proceedings cannot probably be made to result in any substantial advantage to the plaintiffs, they ought not now to be turned round to seek such fancied legal remedy.

But that the plaintiffs have a nominal, legal remedy, does not appear from the facts here disclosed. The whole real estate of *H. & S. Lee,* the principal debtors, as well as of *Samuel H. P. Lee,* the surety, before the execution of the mortgage of the 16th of *October,* 1832, was mortgaged for very large sums of money ; and whether an equity of redemption of any value remained, we are not informed. But if an equity of redemption existed, what was its situation? The lands of the *Lees,* both debtors and sureties, in this state, and in *Ohio,* were mortgaged to secure *an entire debt* due to the *Connecticut* school fund, of 15,210 dollars ; the lands in each state being separately holden for the entire debt. Supposing what may be true, that the whole lands are of greater value than the whole debt ; still, if the lands in *Connecticut* are not worth more than the whole debt, there is no equity of redemption here (and the same is true of the lands in *Ohio,*) which can be taken and applied to these debts, by the unassisted operation of the levy of the plaintiffs' executions. In searching for the plaintiffs' remedy at law, by the levy of their executions, (and no other is suggested,) it will be found, that all the estate of *H. & S. Lee,* constituting this fund, is also under the incumbrance of this

mortgage of *Samuel H. P. Lee*, of the 16th of *October*, 1832. How is the amount of this incumbrance to be ascertained ? It cannot be to any practical or beneficial purpose. It is a mortgage to indemnify against unpaid debts. Its amount cannot be determined, until the debts, including these debts of the plaintiffs, are paid. Appraisers could well estimate this equity of redemption, if the executions were levied upon it.

Such, therefore, is the embarrassed state of the property of the *Lees*, that we do not believe the plaintiffs have any adequate remedy at law, by the levy of their executions. It was suggested in argument, that it does not appear, that the *Lees* are insolvent ; and that, therefore, a remedy still remained at law to the plaintiffs for the collection of their debts. The bill does aver, and the committee have found, that *H. & S. Lee* are insolvent ; and from the peculiar situation of the estate of *Samuel H. P. Lee*, as found by the committee, we can very well see the great improbability of enforcing payment of these debts, by a resort to legal process against his body. It is not for *H. & S. Lee*, the principal debtors in this case, to say, that a remedy may be had against the body of the surety ; and such an objection comes in a very inequitable character from *Samuel H. P. Lee*, while he is refusing to pay or to appropriate the pledge, and is setting these creditors at defiance. *Middletown Bank* v. *Russ* & al. 3 *Conn. Rep.* 135.

A very legitimate object of equity jurisdiction is the prevention of circuity of action and of ruinous litigation. These creditors ask, what the *Lees* cannot equitably withhold or deny, that they may be substituted in the place of the mortgagee, and as such avail themselves of the benefit of the mortgaged estate, as far as it can be made available, without the delay and expense of protracted and doubtful litigation, in payment of their debts. Mortgagees may go upon the pledge, if they please, without regard to the solvency or insolvency of debtors or sureties. Equitably, these creditors are the mortgagees. The mortgage was made for their ultimate benefit ; and, as we have already seen, is *a trust fund* for them. We see no necessity, nor even propriety, of sending these plaintiffs to make an experiment upon the body of *Samuel H. P. Lee*.

3. It was finally objected, that as these creditors had not levied their executions, and so had not thereby obtained a lien upon the property mortgaged, they had no preferable claim to oth-

*New-London,*
*July, 1835.*
—————
New-London
Bank
*v.*
Lee.

er creditors of *H. & S. Lee,* to call for the remedy here sought. If the views heretofore expressed of the nature and objects of the mortgage of the 16th of *October,* 1832, be correct, this objection is without force. We have seen, that the mortgaged property was a fund, created and set apart for a specific purpose, the payment of the debts described in it, and constituted a trust for their payment. These plaintiffs, therefore, are not the general creditors of *H. & S. Lee* without a lien, but they and the other creditors named in the mortgage, have an equitable lien upon the estate mortgaged; and the purpose of their bill, is, to render it efficient. The cases relied upon, by the defendants, *Lees,* in support of this position, have no application to the present case.

*Samuel H. P. Lee* is one of the creditors of *H. & S. Lee.* They owed him 3,000 dollars, secured by the same mortgage of *October* 16th, 1832. These petitioning creditors have no claim upon that debt. It was no part of the fund intended for their benefit. Nor have they any superior equity attachable upon the fund intended for the equal benefit of all, to entitle them to postpone this debt to their own. The mortgage was created for the equal benefit of all the creditors named in it; and all, including *Samuel H. P. Lee,* are to be equally interested in the avails of the property appropriated by it.

We are of opinion, therefore, that the superior court should be advised, that a decree in this case be made in favour of the plaintiffs, that unless their debts be paid, within such reasonable time as the superior court may determine, some suitable person be appointed, by said court, and empowered to sell the mortgaged estate, and pay the avails thereof into that court, for the benefit of the plaintiffs, *Samuel H. P. Lee* and all the other creditors named in the said mortgage deed, in proportion to their several debts, and subject to the future order of said court.

WILLIAMS, Ch. J. and BISSELL, J. were of the same opinion.

HUNTINGTON and WAITE, Js. gave no opinion, having been of counsel in the cause, and otherwise disqualified to judge therein.

Decree for the plaintiffs.