## THE STATE, THE MAYOR, &c., OF JERSEY CITY, PROSECUTORS, v. SMITH HORTON.

1. A municipal corporation is subject to garnishment under our attachment act.
2. In such case a *scire facias* cannot issue out of a justice's court.

On *certiorari*.

Argued at February Term, 1875, before Justices WOODHULL, VAN SYCKEL and SCUDDER.

For the plaintiff, *Douglass*.

For the defendant, *Lewis*.

The opinion of the court was delivered by ·

.VAN SYCKEL, J.   By virtue of a writ of attachment issued by one of the justices of the peace of the county of Hudson, at the suit of Smith Horton, against John Williams, a certain debt of $55.77 was attached in the hands of the mayor and aldermen of Jersey City, as due to the defendant in attachment. A *scire facias* was afterwards sued out by the said plaintiff, before the said justice, against the city, and served upon the mayor, and judgment rendered against the city for

the said debt. Two questions are raised upon the *certiorari* which has been prosecuted to set aside these proceedings.

*First.* Whether a municipal corporation is in any case subject to garnishment under our attachment act.

*Secondly.* Whether a *scire facias*, in such case, can issue out of the court for the trial of small causes against a municipal corporation.

By an express provision of our attachment act, it is to be most liberally construed for the benefit of creditors, and its general scope and object unquestionably is, to subject all property of an absconding or absent debtor to the payment of his debts. Unless, therefore, it is contrary to public policy to tie up by legal process in the hands of a municipality the moneys due its creditors, these political bodies, like other corporations, may be treated as garnishees. Certain powers of government are delegated by the legislature to municipal corporations, to be applied within prescribed territorial limits. To enable them to exercise these powers beneficially, they are clothed with authority to raise money by taxation. This is essential to their existence ; and if they are deprived of their adequate supply of revenue, the corporate body is practically destroyed, and the purpose of its erection is defeated. Upon this consideration, it has become the settled doctrine of the law, that its revenues cannot be seized by execution in the treasury, or in transit to it. The functions of these public corporations can be discharged only through its authorized officers and agents, and if the salaries of such officials could be diverted by legal proceedings to the benefit of their creditors, they would become disabled for want of the means of subsistence to perform their duties, and thus the successful operations of government would be hindered and delayed, if not actually impeded and obstructed. I have found no case in which the salary of an officer, who holds his appointment directly from state authority, has been successfully detained by a creditor. The law would not extend its aid to any procedure which might so seriously interrupt and derange the public business. Municipal corporations being branches of

the state government, exercising delegated political powers, seem, upon principle, to be clearly entitled to the same immunity from interference.   This question was distinctly adjudicated in *The Mayor, &c., of Baltimore,* v. *Root,* 8 *Md.* 96, where the Court of Appeals, upon general principles, refused to enforce the claim of the creditor.

*Fortune* v. *St. Louis,* 23 *Mo.* 239, is to the same effect, but the decision is upon the broad ground that such corporations cannot be garnished, and not on the ground that an officer's salary is exempt from seizure.   In the cases hereafter cited, courts of other states have extended this exemption to all debts of public corporations, on the ground that it would be mischievous to suspend, during the pendency of the action, the possibility of settling the officer's account, and would compel the corporate body to stand at the bar of the courts, and participate in judicial controversies between debtor and creditor, by which its officials would be withdrawn from the performance of their corporate duties, and the public interest be made to suffer.   *City of Erie* v. *Knapp,* 29 *Penn.* 173 ; *Bulkley* v. *Eckert,* 3 *Barr.* 368 ; *Stillman* v. *Isham,* 11 *Conn.* 123 ; *Hawthorn* v. *St. Louis,* 11 *Mo.* 59 ; *Burnham* v. *Fond Du Lac,* 15 *Wis.* 193.

These cases were discussed by the courts upon the ground of public policy, although in some of them the question involved was somewhat controlled by statutory provision. While the policy of the law is clear, which maintains the revenues of a municipal corporation inviolate from the grasp of the creditor, and preserves to its officers the salaries, without which they would be crippled in the discharge of their official functions, it is difficult to perceive the force of the reasoning which would remove from the reach of the remedy which the law gives against the creditor of a natural person or a private corporation, a debt which a municipal corporation owes to a third person not its officer or agent.   *Dillon's Mun. Corp.,* § 65.

Nor would the reason for excluding a creditor from the benefit of the remedy by garnishment apply to a proceeding

under our attachment laws, which can be instituted only where the officer had withdrawn from the service of the public body by absconding, or voluntary removal from the state.

The argument *ab inconvenienti* loses its weight, in view of the fact that, in this state, these political organizations may be sued upon their certificates of indebtedness, their bonds and their agreements to pay money, by persons other than their original creditors, whereby their officers are constantly compelled to wait upon the courts, and experience delays and embarrassments in the adjustment and settlement of their accounts. They are so often embroiled in litigation, in regard to purely financial matters, involving large expenditures in the employment of counsel and otherwise, that the argument from this source, if at all impressive, must yield to the expressed policy of the attachment act, which requires the creditor to be favored. This consideration has prevailed so far that, in *Crane* v. *Freese*, 1 *Harr.* 305, this court permitted money in the hands of a sheriff to be attached as a right and credit of the defendant in attachment, and by express provision of our law, a legacy or distributive share of an estate may be attached in the hands of an executor or administrator. These public corporations have, with legislative sanction, a very liberal power of contracting debts, and in many instances are large borrowers of money. A public policy which would place these large sums wholly beyond the reach of creditors, is not so clear as to justify this court in denying to suitors the beneficial remedy by attachment against this class of debtors. A liberal interpretation of this statute will entitle the creditor to impound a debt of this character, and in pursuit of his remedy, a *scire facias* could issue and be prosecuted to judgment. Whether execution could issue, when judgment is recovered, involves other considerations. *Mandamus* is the principal mode by which payment of a judgment against such a corporation would be enforced ; the property of the corporation, which is used for public purposes, such as public buildings, fire engines and water-works,

cannot be taken in execution. Whether the strictly private property of the corporation can be seized in execution by the creditor, it is not necessary now to determine.

Conceding that the credit in this case was attachable, can the garnishee be pursued by *scire facias* issuing out of a justice's court? In order to recover costs, the plaintiff in attachment need not institute his suit before a justice of the peace. *Hanness* v. *Smith*, 1 *Zab.* 495.

If he does, and it becomes necessary to proceed against the garnishee by *scire facias*, he can do so, only when the writ of *scire facias* can be served in the same manner as provided in the justice's court act for service of a summons. *Del., Lack. and West. R. R.* v. *Ditton*, 7 *Vroom* 361.

The only mode prescribed by that act for serving a summons upon a corporation is contained in section 76. (*Nix. Dig.* 470.)

This provision obviously does not apply to municipal corporations, which have neither a president, cashier, or other designated officer, within the meaning of that act.

In *Inhabitants of Princeton* v. *Mount*, 5 *Dutcher* 299, it was held that an action against a municipal corporation could not be brought in the court for the trial of small causes, because no mode was prescribed for serving a summons.

Under the authority of the case in 7 *Vroom* 361, therefore, the *scire facias* in this case was improvidently issued, and the proceedings below must be set aside, with costs.

Justices WOODHULL and SCUDDER concurred.