1815.

HAMILTON
v.
CUMMINGS.

Decree accordingly.

---

HAMILTON *against* CUMMINGS.

*Sept.* 27th.

This court has power to order a bond or other instrument to be delivered up to be cancelled, whether such instrument is or is not void at law, or whether it be void on the face of it, or by matter shown by the proofs in the cause; but the exercise of this power rests in the sound discretion of the court, and is regulated by the circumstances of each particular case.

Where a bond was good on the face of it, but had been held by the defendant for 27 years, and he admitted that it was given on a trust which he ought not to disclose, and depended on a contingency which had not happened, though it might, by possibility, happen, the court ordered the bond to be delivered up and cancelled.

So, where a bond, conditioned to pay a certain sum, and good on the face of it, and on which a suit at law was pending; and the obligor had a good defence in *equity*, arising from matter *dehors* the bond, it was ordered to be delivered up.

THE bill stated, that the defendant, pretending to be lawfully possessed of a bond, made by *James Hamilton*, the father of the plaintiff, dated the 27th of *September*, 1794, conditioned for the payment of sixty pounds, had brought an action, at law, thereon against the plaintiff, as administrator of his father's estate, and the cause was at issue. That the defendant pretended to have another bond, executed by the

plaintiff's father, for 800 pounds, which he refused to show. The plaintiff charged that both the bonds, if executed, were voluntary, and without consideration, or were given to indemnify the defendant for being bail in certain suits brought against him, and were to be given up and cancelled, if the defendant was not damnified ; that the suits were all settled, and the defendant had been put to no cost or damage.   The plaintiff set forth various facts relative to the bonds and the situation of the defendant, which are not material to state here; and that the defendant was indebted to his father's estate; and prayed that the defendant might pay the sums he owed, and an account, &c., and for a perpetual injunction against any proceedings on the bonds; and that they might be delivered up and cancelled, &c., and for general relief, &c.

The defendant, in his answer, admitted that he held the bond of the plaintiff's father for 60 pounds, and had commenced a suit thereon, &c.   That the plaintiff's father, on the 22d of *September*, 1788, executed a bond to him, conditioned to pay 996 pounds, on the first of *January*, following, which he set forth ; that it was given on a special trust, of a secret and delicate nature, and was to be put in force on certain contingencies, which had not happened ; yet, it being possible that they might happen, he thought it his duty to keep the bond in his possession ; that he paid no consideration for the last-mentioned bond, and had no personal interest therein ; and denied that he ever threatened to put it in suit; that the trust of this bond has no relation to the suit between the defendant and plaintiff; and that the defendant is advised that it would be improper further to disclose it, and prayed the direction of the court therein.   The defendant denied that he had, or pretended to have, any other bonds of the intestate, and if there were any they were paid.   He denied that the bond for 60 pounds was voluntary, or given for indemnity for being bail for the obligor ; that he never was, to his best recollection, bail for the obligor ; but that the bond

was given for a debt justly due on settlement of accounts, and was still due. And he denied that he owed the intestate any thing, &c.

The cause being put at issue, several witnesses were examined on the part of the plaintiff, whose testimony related principally to certain papers in the plaintiff's possession, showing that the bond for 60 pounds was given by way of indemnity merely, and that the defendant had sustained no damage.

Witnesses were, also, examined on the part of the defendant, whose testimony related chiefly to the good character of the defendant, his situation, business, and connexion with the plaintiff's father, &c.

The rule for publication was passed, and the cause set down for a hearing, by consent, on written briefs or arguments, submitted to the court with the pleadings and proofs.

*I. Hamilton,* in person.

*Burr,* for the defendant.

THE CHANCELLOR. Upon the answer and proofs in this cause, the relief sought and claimed is, that the two bonds acknowledged to be held by the defendant, should be decreed to be delivered up and cancelled. The question, whether such a remedy can, or ought to be applied, leads to an interesting inquiry.

1. The defendant admits that he holds a bond, executed by the ancestor of the plaintiff, on the 22d of *September*, 1788, for the payment of 996*l.* on the first of *January* following; and that it was given upon a special trust, of a secret and delicate nature, which he does not think proper to disclose; and that it was to be in force only upon certain contingencies which have not yet happened, and, probably, never will; and that he paid no money or other consideration for it, and has no personal interest in it, nor has ever

1815.

HAMILTON
v.
CUMMINGS.

pretended to put it in suit. After such a confession, it would be very unreasonable that the bond should be suffered to continue a dead weight upon the property that may have descended to the plaintiff. It is, however, not easy to extract from the books any precise rule by which the jurisdiction of the court is, in such cases, to be exercised. The bond, most probably, could not be enforced at law, though it appears on the face of it to be an absolute bond for the payment of money. The lapse of 27 years, if not most satisfactorily accounted for, would form of itself a conclusive bar to a recovery ; and the admissions in the answer must destroy its validity here, even if they cannot be received as a defence at law. Why, then, should it any longer exist to cast even a shade over the title to the assets of the ancestor ?

I have looked into the cases on the point of jurisdiction, and I have no doubt that the court has competent power to order the bond to be cancelled ; and the power is the more necessary since there is no such jurisdiction at law.

In *Minshaw* v. *Jordan*, (3 *Bro*: 18. n.,) a bill was filed to have a promissory note delivered up and cancelled, as obtained by fraud, and without consideration. The *Master of the Rolls* retained the bill, and allowed the defendant to proceed at law upon the note ; and the verdict being found against it, he then decreed that the note be delivered up to the plaintiff to be cancelled. But, afterwards, in *Ryan* v. *Macmath*, (3 *Bro*. 15.,) Lord *Thurlow* would not direct a note to be delivered up, though a recovery had been unsuccessfully attempted at law ; and he would not admit the rule in this general extent, that whenever one party had an instrument on which he could not maintain an action at law, he must be decreed to give it up, and he accordingly dismissed the bill, but without costs. Sir *Samuel Romilly*, in citing this case, in 13 *Ves*. 584., observed, that the decision was disapproved of, at the time, as the note was void, not upon the face of it, but from collateral circumstances :

and in *Newman* v. *Milner*, (2 *Ves.* jun. 483.,) notwithstanding this case of *Ryan* v. *Mackmoth* was mentioned, Lord *Loughborough* ordered a bill of exchange, avowedly given by one partner in the name of the firm, for his private debt, to be delivered up, with costs, without even waiting to have its validity tried at law; and he did it on the ground, that the evidence was clear and decisive against the bill, and that the payee took it, knowing it to be for a private debt, and that there was no need of a verdict to satisfy the conscience of the court. But the subsequent cases of *Franco* v. *Bolton*, (3 *Ves.* 368.,) and of *Gray* v. *Mathias*, (5 *Ves.* 286.,) are calculated to throw doubt once more on the exercise of this power. In the first of those cases, a bond was alleged to have been given for an illegal consideration, and the obligee had obtained a verdict at law. The bill was to have the bond delivered up ; but it was, on demurrer, dismissed by Lord *Loughborough*, on the ground, that there was no necessity for the interposition of the court, as the matter could have been pleaded, and the bond rendered null, at law. In the other case, the bond was void on its face, as appearing to have been given *pro turpi causa,* but the *court of exchequer* refused a decree to deliver it up, and principally on the ground of the length and expense of such a remedy in equity, when the defence at law was irrefragable. The *Ch. Baron* observed, with some sensibility, that though equity might have a concurrent jurisdiction, it was not fitting, in that particular case, to exercise it, as the plaintiff had a full defence at law ; and it was oppressive to seek, by a long and costly litigation in chancery, to have the bond delivered up, when, by the plaintiff's own showing, it was a mere nullity. In that case, the bond had never been sued at law, and the bill was dismissed, with costs.

The equity power was afterwards asserted by Lord *Eldon*, in *Bromley* v. *Holland*, (7 *Ves.* 3.,) and he dwelt much on the question of jurisdiction, and did not concur in the decision in *Franco* v. *Bolton*. He seemed to think the

1815.

HAMILTON
v.
CUMMINGS.

question had become settled, by a serious of decisions, in fa-
vour of the authority of the court to direct instruments to
be delivered up, though they might be void at law.   He
admitted there was some degree of contradiction in the
cases, but he inclined in favour of the jurisdiction, even if
the question had been *res integra ;* and though he could not
say, if it was clear that no use could be made of the instru-
ment, that was ground enough for the equitable jurisdiction,
yet " it was not unwholesome that an instrument should be
delivered up upon which a demand may be vexatiously made
as often as the purpose of vexation may urge the party to make
it." In *Jackman* v. *Mitchell,* (13 *Ves.* 581.,) the equity
jurisdiction was again freely exercised.   The bond there was
given to secure one creditor the deficiency of a composition,
and was never communicated to the other creditors, and had
never been put in suit.   The bill charged the bond to have
been thus taken against the policy of the law, and in fraud
of creditors ; and the counsel for the defendant, when
speaking of the jurisdiction, observed, that if an instrument
was void upon its face, the court would not assume jurisdic-
tion and cancel it, because it was void at law ; and that " there
was no instance of a decree for delivering up a bond, ap-
pearing upon the face of it to be void."   Lord *Eldon* ex-
pressly waived any opinion on that distinction as to jurisdic-
tion, but said that the bond was bad, because it was proved,
*aliunde,* that it was intended to be kept secret; and he ac-
cordingly decreed, that it be delivered up, and awarded
costs against the defendant.

I am inclined to think, that the weight of authority, and
the reason of the thing, are equally in favour of the juris-
diction of the court, whether the instrument is, or is not,
void at law, and whether it be void from matter appearing
on its face, or from proof taken in the cause, and that these
assumed distinctions are not well founded.   It is every day's
practice, as the counsel observed, in *French* v. *Connelly,*
(2 *Anst:* 454.,) to order instruments to be delivered up, of

which a bad use might be attempted to be made, at law, although they could not even there entitle the holders to recover. It is, indeed, not very apparent, why a doubt could have been started in some of these modern cases as to the general jurisdiction of the court, when we consider the uniform tenor and language of the more ancient decisions, and which do not appear to have turned upon the distinction whether the instruments were, or were not, void at law. In *Whittingham* v. *Thornburgh*, (2 *Vern.* 206.,) and *Goddart* v. *Garrett*, (*ibid.* 269.,) and *De Costa* v. *Scandrel*, (2 *P. Wms.* 170.,) policies of insurance, procured by fraud, were ordered to be delivered up and cancelled, though the fraud was equally a defence at law. And in another case, (*Law* v. *Law, Cases temp. Talbot*, 140. 3 *P. Wms.* 391.,) Lord *Talbot* ordered a bond to be cancelled, and charged the defendant with costs, without deciding whether, or not, it was good at law. But, while I assert the authority of the court to sustain such bills, I am not to be understood as encouraging applications where the fitness of the exercise of the power of the court is not pretty strongly displayed. Perhaps the cases may all be reconciled on the general principle that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate ; and that the resort to equity, to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable nature, or because the defence not arising on its face, may be difficult, or uncertain at law, or from some other special circumstances peculiar to the case, and rendering a resort here highly proper, and clear of all suspicion of any design to promote expense and litigation. If, however, the defect appears on the bond itself, the interference of this court will still depend on a question of expediency, and not on a question of jurisdiction. It may, sometimes, become essential to the perfect and tranquil enjoyment of private right, that this most important branch of equity power should be exercised in the one case as well as

1815.

HAMILTON
v.
CUMMINGS.

in the other; and it may be here observed, that in the case of *Law* v. *Law*, the whole consideration was spread out upon the bond, and that, as the case is reported in *Peere Williams*, the Lord Ch. was inclined to consider the bond as void at law as well as in equity, and yet he cancelled the bond without sending the parties to law. The learned counsel, therefore, in *Jackman* v. *Mitchell*, appear to me to have hazarded too much in their assertion that there was no such case to be found.

The bond now in question comes within that case, for it is good on its face, and void only from the facts disclosed by the defendant's answer. We can, consistently with the whole current of authority, direct it to be cancelled. It is the more proper to do so, because it is, at least, doubtful, whether the pretended secret trust, under which it was taken, and the failure of that trust, would be received as a defence at law. My impression is, that it could not. But, in this court, the evidence furnished by the answer is decisive. The defendant holds a bond for 27 years, and says it was given upon a trust which he ought not to disclose, and depends upon a contingency which has never happened, and which he says is only within the reach of possibility. Such a bond cannot be permitted to endure for ever, and we cannot recognise any trust which is not disclosed, and is, therefore, unknown. It is not convenient, or just, that such a bond should continue, with a pretension to the assets in the hands of the plaintiff. It might embarrass their application, or weaken their security, or poison their enjoyment. It is immoral for a person to retain a bond which is useless to him, and an annoyance to others.

This bond must, therefore, be delivered up, and cancelled.

2. The other bond, conditioned for the payment of 60 pounds, and on which a suit is pending at law, is shown, by the proof, to be no longer valid. It bears date on the 27th day of *September*, 1794, and is made payable on the 29th of the same month; and the answer of the defendant avers that

it was given for a debt justly due on a settlement of accounts;
and denies that it was given to indemnify the defendant for
becoming bail in any suit whatever; and that the defendant
was never bail in any suit for the obligor. The answer fur-
ther states, that one of the witnesses to the bond is dead,
and that *William Hill*, the other witness, is living, and is a
man of good repute. This cause was put at issue, and wit-
nesses examined on each side, and publication passed by con-
sent. In the course of examination, the plaintiff proves, by
this same witness, that he was present at the execution of
the bond; and that he, with the other witness, (now dead,) at
the same time, attested a receipt given by the defendant to
the obligor, showing that the bond was given by way of in-
demnity to the defendant for becoming bail for the obligor.
The receipt is made an exhibit in the cause, and proved by
his witness; and it is of the same date with the bond, and
declares that the bond, which it duly specifies, was given as
an indemnity to the defendant for being surety for the obligor,
in a suit brought against him by one *Samuel Wood;* and
that if the suit was settled and discharged in due time, with-
out any further damage, the bond was to be void. No
damage is pretended to have been sustained. The defendant
denies that he ever was bail for the obligor. As the receipt
goes to contradict the express terms of the bond, and is not
under seal, I apprehend it would not be admitted, at law, as
a defence against the payment of the bond; and as it forms a
matter of defence *dehors* the bond, and is good in equity, it
brings the case within the reach of all the decisions in favour
of the exercise of the jurisdiction of this court; and it be-
comes essential to justice that the court should interfere and
protect the plaintiff from the claim set up at law.

I have not deemed it regular to take notice of the sugges-
tion of the counsel for the defendant, accompanying his
brief, (for the case was, by mutual arrangement and
consent, argued on paper,) of a defect in the interrogatories
on the part of the plaintiff, and of the delay of his solicitor

1815.

HAMILTON
v.
CUMMINGS.

to produce the exhibit. There is no motion before me on the subject, nor would it have been in season if it had been made; for even before the last term, publication passed by a rule entered by consent, and the cause was, by the like consent, set down for hearing at the last term. I shall, accordingly, decree, that both the bonds be delivered up to the register, or assistant register, and cancelled within 20 days after notice of this decree; and that the defendant be perpetually enjoined from prosecuting either of the said bonds at law; and that the defendant pay the costs which have accrued in the suit at law, and, also, the costs of this suit.

Decree accordingly.