Sanford, J.
It is manifest from the finding of the superior court, that the collection of the draft specified in the petitioner’s bill ought not to be enforced.
That draft was not drawn in payment of, or as security for, any debt, or in consideration of any money or property advanced by the payee, or received by the drawer; but as part of a loan of $15,000 to the Willamette Falls Canal Milling and Transportation Company, for which a mortgage was to be made upon the steamboat and all the other property of the company in Oregon. It was drawn and accepted in good faith, in expectation of the sale of the drawer’s property, and the receipt of the proceeds of such sale, by the acceptor in time to meet its payment at maturity. But the acceptor being unable to make the anticipated sales in time, the draft was protested for non-payment, and returned to the president of the company. The company failed, its steamboat was destroyed, and it became confessedly and *510 hopelessly insolvent, and utterly unable to make the stipulated security for the loan.
The drawer, finding that the company had become insolvent, and unable to fulfill its contract with him for security, notified the acceptor not to pay the draft, and demanded of the officers of the company that it should be given up to him, because the company was not in a condition to perform its part of the agreement. They refused to sürrender the draft, and the president afterwards delivered it to C. C. Baker, one of the members and a director of the company, who forwarded it to the respondent Fisk, to be collected and applied upon an account which Fisk then had against Baker. It was payable to David Paige or order. Paige was dead before the delivery of the draft to Baker, and the draft was never indorsed to Baker, or to Fisk, by any one; and the president of the company, who placed it in Baker’s hands, did not pretend that the company had any right to it, or attempt to effect its transfer. It was protested, and long over-due, and Baker “had full knowledge of all the facts aforesaid.” Fisk sued the acceptor in his own name. That suit is now pending, and the acceptor has now in his hands the funds of the drawer, which he will appropriate in payment of the draft, if Fisk shall recover a judgment against him on his acceptance. The draft, before its protest and return, had been indorsed by Paige, the payee, to Sanders & Brenham, by them to Beebe & Co., and by Beebe & Co. to Seeley, and all these indorsements were in full, and remained uncancelled at the time Fisk’s suit was commenced, but, except the name of Paige, have since been erased by Fisk’s attorney.
Upon this finding of the facts, the petitioner is very clearly entitled to the relief for which he asks. It would be the height of injustice to collect this draft from the acceptor, and, by consequence, from the petitioner, who has received for it no consideration whatever. The consideration for which it was drawn has entirely failed, and if the petitioner is compelled to pay it he will be altogether without redress. No principle of public policy, regarding the circulation of nego *511 tiable paper, is in jeopardy, because the draft was dishonored paper when it came into the hands of Fisk, and of Baker, for whose benefit the suit upon it is prosecuted. Baker had actual notice of all the equities attached to it, and Fisk has paid nothing for it, he being only to apply it on Baker’s account 'when collected.
It is unnecessary to decide whether Fisk has such a title to the draft that he can maintain his action on it, or whether the facts found by the superior court would constitute for Keeler a good defense at law, because, if both of these questions were to be decided in Keeler’s favor, still the petitioner would not have that adequate, obvious, and complete remedy, to which we think he is entitled, and which a court of equity alone can give. The draft, though over-due, is still transferable; no fatal infirmity is apparent upon its face; the pending suit upon it may be withdrawn, and another instituted, either against the acceptor or the drawer, in the name of Seeley, or of any other indorsee from him into whose hands it may be transferred. Strangers may be defrauded by it, and the petitioner may be repeatedly harrassed by an outstanding claim, which, upon every principle of equity, ought to be defeated, and effectually suppressed.
We entertain no doubt of the jurisdiction of a court of equity to afford to the petitioner the relief for which he seeks, and we think this record exhibits, in a striking light, the necessity for such a jurisdiction, and the fitness of its exercise in the case before us. See 2 Story Eq. Jur., §§ 700, 700 a; Hamilton v. Cummings, 1 Johns. Cha., 517; Piersoll v. Elliott, 6 Peters, 95; New London Bank v. Lee, 11 Conn., 120; Chipman v. City of Hartford, 21 id., 489; Boyce v. Grundy, 3 Peters, 215.
Again, it is said that Baker ought to have been made a party to the bill. But this objection, if it could ever have been available, comes now too late. After a hearing of the cause upon its merits, either before the court or its committee, such an objection can not be entertained. New London Bank v. Lee, supra. Chipman v. City of Hartford, supra.
Finally, it is contended that no decree should be passed in *512 favor of the petitioner, because the whole amount of the loan of $15,000 has never been advanced by him, and it is not found that he ever demanded his security. But the very ground on which the court affords to the petitioner its aid, is, that the hopeless insolvency of the company, and its utter inability to perform its part of the contract by making the stipulated security for the loan,exonerated the petitioner from his undertaking to make to the company further advancements toward such loan, and entitled him to the surrender of the unpaid draft. The law never requires the performance of an entirely useless and nugatory act; and the .conceded and hopeless insolvency of the company, and its utter inability to comply with any such demand, afford an adequate excuse for its omission.
We advise the superior court to grant the prayer of the petition.
In this'opinion the other judges concurred.
Decree for petitioner advised.