Bogert v. City of Elizabeth.

## JUNE TERM, 1876.

BOGERT, appellant, and THE CITY OF ELIZABETH, respondent.

1. The charter of the city of Elizabeth directed the whole cost of the assessments for street improvements to be imposed on the property on the line of the street opposite such improvements, such assessment to be made in a just and equitable manner, by the common council; it was *held* that such power could not be executed, and the provision was void.

2. A sale of land having been made by force of such provision, and the city becoming the purchaser, a bill filed by the land-owner to clear his title from the cloud thus created, was sustained by force of the statute to quiet titles, passed March 2d, 1870.

3. Delay in the land-owner in allowing the time for bringing a *certiorari* to pass, is no bar to the exhibition of such a bill.

This case stood on bill and demurrer. 10 *C. E. Green*, 427. The complainant was the owner of a lot in the city of Elizabeth, which had been sold to raise an assessment imposed upon it in the laying of a wooden pavement in the roadway in front of it. The city, at this sale, became the purchaser, and the prayer of the bill is that the title of the complainant may be quieted against the lien thus asserted.

*Mr. A. Dutcher* and *Mr. George Putnam Smith*, for appellant.

*Mr. Williamson*, for respondent.

The opinion of the court was delivered by
THE CHIEF JUSTICE.

The proceeding which resulted in a sale of the premises now in question was, conspicuously, a nullity. It is the product of the one hundred and fifth section of the act to revise the charter of the city of Elizabeth, passed March 4th, 1863, (*Pamph.*

Bogert *v.* City of Elizabeth.

*L.,* 1863, *p.* 149.) The language of the clause is this : " That the whole amount of the costs 'and expenses of regulating, grading, and paving any street, or section of a street, or grading, graveling, flagging, macadamizing, or otherwise improving any street, or section of a street, shall be assessed upon the owners of lands and real estate upon the line of said street, or section of a street, so improved ; and whenever such improvement shall have been made under the provisions of this act, the city council shall ascertain the whole amount of the costs and expenses of such improvement in any street, or section of a street, and shall cause to be made a just and equitable assessment thereof upon the owners of lands and real estate on the line of such street, or section of a street, by the city surveyor, which shall be and remain a lien thereon, from the time when said improvement shall have been made." 

In view of the decisions heretofore made in this court, it is impracticable to give any effect to the authority here attempted to be granted to this municipal government. The provision just recited requires that the whole cost of the improvement shall be put on the property on the line of the street, in such proportion as may seem equitable to the common council. This order is so plain and definite, that it is impossible, by construction, to contract it within constitutional bounds. There is no hint in the clause, suggestive of the idea that the land on the line of the street is not to be burthened beyond the degree to which it is specially benefited. In the case of *The Village of Passaic* v. *State,* 8 *Vroom* 538, this court held that if the language of a municipal charter contained expressions which could be fairly intended to imply that the assessments authorized were to be restricted in amount so as to be commensurate with the charge imposed on the particular land, in such case such grant of power would be sustained. But in the present instance, no such implication is possible. The sum of the expense is ordered to be put on certain designated property, without regard to the proportion of benefit it has received from the improvement. The direction is perfectly clear ; the entire burthen is to be borne by the land along the line of the

improvement, and the ratio of distribution among the respective lots is left to the judgment of the common council. Such a power, according to legal rules now at rest in this state, cannot be executed. The whole clause is nugatory and void, and all proceedings under it are not mere irregularities, but are nullities.

It is consequently clear that the sale of the complainant's land was an empty form, and passed no title to the city.

Therefore, the question arises, why, on this bill, should not the claim of the city to a lien on this land by virtue of this unauthorized procedure, be declared formally, by a decree, to be null?

The equity of the bill is that, although the sale is plainly void, it clouds the complainant's title. On this ground, the jurisdiction of the court is placed. Whatever doubts formerly existed, there can be none at the present time, that in cases where an instrument exists which, though really void, has an ostensible validity, and which throws a doubt over the title to real estate, a court of equity will interfere, and relieve against the injustice of such an illusion. The duty of the court to intervene on such an occasion, was derived from the fact that if an instrument could neither be used nor enforced, and was detrimental to the title of another, it was against conscience for the party holding it to retain it, since he could have none but an unworthy object for so doing. But although the general jurisdiction of the court over this subject became completely established in the time of Lord Eldon, and has not since been seriously questioned, nevertheless there has been great judicial dissension with respect to the extent of such jurisdiction; one point in doubt being whether it extends to the instance of an instrument void upon its face, and which, being no better than blank paper, seems to be incapable of being turned to any vexatious purpose. In England, the decisions settle the rule that equity will not give aid in such cases, as the relief is adequate at law. But in *Hamilton* v. *Cummins*, 1 *Johns. Ch.* 517, Chancellor Kent took the opposite view, maintaining that upon the reason of the thing,

an instrument clouding a title to land should be decreed
to be void, whether or not it was fatally void on its face. But
this opinion of the learned Chancellor has not prevailed in the
courts of his own state, but the opposite view has so com-
pletely taken root, that in *Heywood* v. *City of Buffalo,* 14 *N.
Y.* 534, a bill was dismissed that had been exhibited to set
aside an illegal assessment which appeared to be a cloud upon
the complainant's title, for the reason that it was not averred
that the invalidity of such assessment did not appear on the
face of the proceedings.   That the adjudications are much
arrayed against each other on this question, will be manifest
to any one who will refer to the numerous cases cited by
Judge Cooley in his valuable treatise on taxation, which has
just been published.   *Cooley on Taxation* 542, 543.

In the case now before this court, the illegality of this sale
and of all the proceedings leading to it, is, at first view, so
conspicuous, that if, in this state, the question of the jurisdic-
tion of the court had to be decided from considerations derived
from general principles, it is easy to see that a conclusion could
not be reached without difficulty.   But this is not the case, for
the inquiry is controlled by the act to quiet titles, passed
March 2d, 1870, (*Pamph. L.,* 1870, *p.* 20.)   The first section
of this act is in these words : " That when any person is in
peaceable possession of lands in this state, claiming to own the
same, and his title thereto, or to any part thereof, is denied or
disputed, or any person claims or is claimed to own the same,
or any part thereof, or any interest therein, or to hold any lien
or encumbrance thereon, and no suit shall be pending to en-
force or test the validity of such title, claim or encumbrance,
it shall be lawful for such person so in possession to bring
and maintain a suit in chancery to settle the title to said
lands, and to clear up all doubts and disputes concerning the
same."

The object of this enactment, I think, is obvious : it was to
extend the jurisdiction of the court of equity over the class of
cases embracing the present one.   Unless this was the design,
I am at a loss to assign to it any office, for the jurisdiction of

the court, to the extent of the English and New York rule, could not have been deemed in doubt. The act is plainly remedial, and its language is very comprehensive, and in my judgment it should be construed to give jurisdiction in every case in which any claim or lien upon real estate appears to be asserted, or to exist. It is highly desirable that land should be freed from every lurking and unsubstantial claim, for even the suspicion of such claim, no matter how ill-founded, affects the value of the property when on sale. The policy which the statute is designed to promote is beneficial and enlightened, and it should be received with favor. It provides adequate checks against abuse, for it declares that if the defendant shall suffer a decree *pro confesso* to be taken, such decree shall not carry costs; and if he shall deny that he claims any interest or encumbrance in the premises, he shall be entitled to costs. I cannot see why, under these safeguards against vexation, an owner of land should not have the privilege, in every imaginable case, of putting to the test everything which presents a suspicious appearance against his title. The sale in the present case was impressive by being made under a city ordinance, conducted by official authority, and in the course of a procedure presenting, to the unprofessional eye, the ordinary marks of legality. Its effect, I cannot doubt, would be to detract, in a considerable degree, from the market value of the land. In my opinion, the statute in question can have no more appropriate use than in its application to this situation.

Nor is this a case to which the doctrine that a party will lose his remedy by his own laches, is to be applied. Where the proceeding complained of is so entirely *ultra vires* that it could not in any way have been made available, delay in seeking relief is not objectionable. The reason is, it then produces no hardship and inflicts no loss. The complainant was not bound to remove these proceedings by *certiorari;* they were absolutely void, from beginning to end, and he had a right so to treat them; they could not grow, by lapse of time, into a right. The city can gain nothing by retaining the shadow of a right under this sale; if retained for half a cen-

tury, it would be nothing but a shadow still. It is, therefore, a gratuitous injury to the complainant. He is, in my opinion,. entitled to relief at the hands of the court.

The decree should be reversed.

Decree unanimously reversed.