CONNECTICUT MUT. LIFE INS. CO. (BUELL v.). See Cases Nos. 2,103 and 2,104.

CONNECTICUT MUT. LIFE INS. CO. (COVERSTON v.). See Case No. 3,290.

CONNECTICUT MUT. LIFE INS. CO. (HARDS v.). See Case No. 6,055.

## Case No. 3,107.

CONNECTICUT MUT. LIFE INS. CO. v. HOME INS. CO.

[17 Blatchf. 142.][1]

Circuit Court, D. Connecticut. Sept. 1, 1879.

CANCELLATION OF LIFE INSURANCE POLICY.

1. A mutual life insurance company issued to B. and to H. a policy insuring the life of B. for the benefit of H., for a premium to be paid on a specified day, annually. By the policy, it was to become void if B. should become so far intemperate as to impair his health. The premiums were paid for six years. Two months after the last payment the company cancelled the policy because it learned that B. had become so far intemperate as to impair his health, and notified H. of such cancellation, and offered to pay the surrender value of the policy. H. refused to recognize such cancellation, or to surrender the policy, and tendered to the company the annual premium every year, the tender

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

being always refused. The company filed a bill in equity against H., praying that the policy be declared null, and be surrendered on payment of its surrender value. On demurrer: *Held*, that the bill would lie.

2. A court of equity will exercise its power of setting aside contracts for defects not apparent on their face, although such defects arose after the execution of the contracts, in cases where special circumstances render it inequitable or unjust, or a hardship, to compel the plaintiff to await a suit at law at the instance of the other party.

3. The rule, that a court of equity will not aid to enforce a forfeiture, or to divest an estate for breach of covenant or condition subsequent, is not applicable to the cancellation of a policy of insurance on the life of a living person.

Henry C. Robinson, for plaintiff.
Richard D. Hubbard, for defendant.

SHIPMAN, District Judge. This is a bill in equity, which alleges. in substance, as follows: On June 20th, 1870, the plaintiff, a Connecticut corporation, duly authorized to issue policies of insurance upon lives, issued to Henry H. Bigelow, and to the defendant, a New York corporation, a policy of insurance, whereby the plaintiff insured the life of said Bigelow, in the sum of $6,000, for the benefit of the defendant, upon the payment of a premium of $180.54, and upon the agreement of the insured to pay a like sum on or before June 20th, in every year, during the continuance of the policy. By said policy it was agreed, that, if the assured should become so far intemperate as to impair his health or induce delirium tremens, the policy should become null and void. The premium payments were made by the insured, or by the defendant, until and including the payment maturing June 20th, 1876. About August 28th, 1876, the plaintiff was first apprised that the insured had become so far intemperate as to impair his health. On said day said policy became null and void by said intemperance, and thereupon, on August 29th, 1876, the plaintiff cancelled said policy, and notified the defendant of said forfeiture and cancellation, and offered to pay, in cash, the surrender value of said policy, upon its surrender. Afterwards, the defendant, who is the true owner of the policy, and has acted as the exclusive owner thereof, on or about the ——— day of ———, 1877, refused to recognize said cancellation, and declared that it should treat the contract as valid and outstanding against the plaintiff. The plaintiff offered to reinstate the policy, provided it should appear, upon a fair medical examination, that the health of the insured had not been impaired by intemperance since the date of the policy. The defendant refused to assent to such examination. and has the policy in its possession, and refuses to surrender the same, and has, ever since said cancellation, tendered to the plaintiff, on June 20th in each year, the amount of the annual premium. which tender has always been refused. The defendant holds the con-

tract as, in fact, a valid obligation of the plaintiff, and apparently valuable to any person to whom it may be negotiated. The plaintiff is a mutual company, and, by its charter, each policy holder is entitled to a voice in the election and management of the company. It is important, to the proper management of the company, and to a just distribution of its surplus, that the real holders of its policies be known absolutely. All the defences depend upon facts which do not appear upon the face of the instrument. There are, at present, within reach of legal process, a sufficient number of competent and credible witnesses to fully prove the avoidance of the policy, but the plaintiff fears that these witnesses, by death or other causes, may become unavailable for the purpose of resisting a suit upon the policy, at some future time, at the instance of the defendant. The plaintiff offers to pay the full surrender value of the policy at the time of its avoidance. The bill prays that the policy may be declared null, and that the defendant be ordered to surrender it to the plaintiff for cancellation, upon payment of its surrender value, or for other relief. To this bill the defendant has demurred generally. The ground of the demurrer is the alleged want of power in a court of equity to cancel the policy at the instance of the insurance company; and it is insisted (1) that, while a court of equity has power to cancel instruments which are void by reason of fraud in their inception. it has no jurisdiction to cancel instruments which have ceased to be binding since their execution; (2) that while, at the instance of the assured, a court of equity may compel an insurance company to reinstate a cancelled contract, equity will not interfere to enforce a forfeiture.

1. Upon the first proposition, it is true, that a court of equity has not, or will not exercise, jurisdiction to cancel a contract, merely because it has become void or inoperative by reason of some fact which has taken place since its execution. Such an exercise of power would give a court of equity concurrent jurisdiction with courts of law over all contracts which one contracting party may allege to have been broken by the other. Thornton v. Knight, 16 Sim. 509. But, while relief from the consequences of fraud is peculiarly the province of a court of equity, it has not refused to cancel contracts which have been performed, or which have become inoperative, when the special circumstances of the case rendered it unjust or oppressive that the contract should be an outstanding claim against the plaintiff. The reasonable rule is, that a court of equity will exercise its power of setting aside contracts for defects not apparent on their face, although such defects arose after the execution of the contracts, in cases where the special circumstances render it inequitable or unjust, or a hardship, to compel the plaintiff to await a suit at law at the instance of the other party.

Hamilton v. Cummings, 1 Johns. Ch. 517; Hoare v. Bremridge, 8 Ch. App. 22; City of Hartford v. Chipman, 21 Conn. 488; Ferguson v. Fisk, 28 Conn. 501. Chancellor Kent was inclined to think, in Hamilton v. Cummings, that a court of equity had jurisdiction to set aside a bond or other instrument, whether the instrument was void for matter appearing on its face, or from the proofs, "and that these assumed distinctions were not well founded." He says: "Perhaps all the cases may be reconciled on the general principle, that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate; and that the resort to equity, to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable nature, or because the defence, not arising on its face, may be difficult, or uncertain at law, or from some other special circumstances peculiar to the case, and rendering a resort here highly proper, and clear of all suspicion of any design to promote expense and litigation. If, however, the defect appears on the bond itself, the interference of this court will depend on a question of expediency, and not on a question of jurisdiction."

2. It is true, that courts of equity will not aid to enforce a forfeiture, or to divest an estate for breach of covenant or condition subsequent, unless, perhaps, under extraordinary circumstances. Horsburg v. Baker, 1 Pet. [26 U. S.] 232; Livingston v. Tompkins. 4 Johns. Ch. 415; 2 Story, Eq. Jur. § 1319. When an estate has been forfeited, or when a pecuniary penalty has been incurred, by reason of the happening of a condition subsequent, or of the breach of a covenant, there is usually an immediate remedy at law to regain possession of the estate or to recover the penalty. There being such a remedy, equity will not interfere. "The great principle is, that equity will not assist in the recovery of a penalty or forfeiture, when the plaintiff may proceed at law to recover it." Livingston v. Tompkins, 4 Johns. Ch. 432. In this case, there is no estate to be regained, there is no sum in damages to be recovered. The insured is still living, and a cancellation of the contract is the only result which is to be attained. The plaintiff has now no remedy at law, and, unless it can resort to a court of equity, it must wait and become a defendant at the future suit of the holder of the policy. When such a suit will be commenced is a matter of uncertainty. The rule is not applicable to the cancellation of a policy of insurance upon the life of a living person.

The expediency of interference by a court of equity is apparent from the following considerations: The cancellation of the policies of delinquent policy holders is a duty which a life insurance company owes to its other policy holders. All the insured have an interest that the covenants of each insured person as to health and the payment of premium shall be performed, and that the lives of the insured and the prosperity of the company shall not be impaired by any act which the insured person has agreed shall not be committed. The company insures the policy holders at a rate based upon the estimated average mortality of ordinary healthy persons at the ages of the insured respectively, and the insured agree, among other things, that they will not impair their health by the immoderate use of intoxicating liquors. If the insured are permitted, with the knowledge of the company, to indulge in practices which notoriously invite disease, the system of insurance and the safety of the investment of other policy holders are endangered. Each insured person has an interest in the continuance of the life of every other insured person. In New York Life Ins. Co. v. Statham, 93 U. S. 24, Mr. Justice Bradley says: "The insured parties are associates in a great scheme. The associated relation exists whether the company be a mutual one or not. Each is interested in the engagements of all; for, out of the co-existence of many risks arises the law of average, which underlies the whole business."

But, it is said, the corporation possesses, by contract, the power of declaring that policies have been cancelled for the cause of intemperance. The plaintiff has already exercised this power, and has protected itself and its policy holders. It is not necessary that the policy should be judicially declared to be cancelled, and there is no exigency which requires this court to aid or assist in the cancellation. It is important both to the company and to the insured that the company should be able to know, in the life time of the insured, whether it has made an error in the cancellation of his policy, and whether it is still bound to receive the premium, and whether he has a right to share in the dividends, or profits, or surplus. The insured is annually tendering his premium, and the company is annually refusing to accept the tender. The postponement till the death of the insured of knowledge whether or not the company is under obligation to receive the tender is inequitable and unjust to both parties, because it is a postponement for an uncertain time, a postponement to the pecuniary damage of one party, and a postponement to a time when the ascertainment of the truth of the facts upon which the action of the company was based may have become doubtful by lapse of time and the death or removal of witnesses. It is important that neither party should be left in doubt, during a series of years, as to his or its pecuniary rights in the policy. These special circumstances seem to me to be sufficient to justify the plaintiff in its resort to a court of equity.

The demurrer is overruled, without costs. with leave to answer over.