# WELDEN *v.* STICKNEY.

### CLOUD ON TITLE ; EQUITY PRACTICE.

1. A cloud on title is an outstanding claim or incumbrance on real estate, which, if valid, would affect or impair the title of the owner, and which apparently and on its face has that effect, but which can be shown by extrinsic evidence to be invalid or inapplicable to the estate in question.

2. A deed executed and recorded by a stranger to the title, is not, in the legal sense of the term, a cloud upon the title of the real estate described therein, of which equity will take cognizance in a bill filed to remove the cloud alleged to be created by it.

3. Where a bill filed for that purpose is dismissed upon the ground that such a deed does not constitute a cloud upon the complainant's title, the decree dismissing the bill should declare the nullity of the deed, in which event the complainant's purpose will be sufficiently subserved.

No. 83.  Submitted September 27, 1893.—Decided November 6, 1893.

HEARING on appeal from a decree of an equity term of the Supreme Court of the District of Columbia, in a suit to remove a cloud upon the title of complainant's real estate and to obtain the payment to her of certain money in the hands of one of the defendants.  *Reversed.*

THE COURT in its opinion stated the case as follows:

The complainant, Nancy Welden, formerly Nancy Clark, claiming to be the owner of " a part of lot seven (7), in square 214, Washington, D. C.," filed her bill of complaint in this case to procure the cancellation and release of a certain deed of trust, alleged by her to constitute a cloud upon her title, and which it seems had been executed by one Ida S. Bowman, a total stranger to the title, so far as the record discloses, to secure an alleged indebtedness to the defendant, Eliza Bowen, of the sum of $1,000, evidenced by two promissory notes of $200 and $800 respectively, payable in ninety days after their date, which was also the date of the deed, November 2, 1888.

It is averred in the bill that neither Ida S. Bowman nor Eliza Bowen had any real interest, right or title, either legal or equitable, in the real estate in question; and that the deed of trust mentioned had been executed to defraud the complainant of her just rights and to cloud her title. The complainant, who appears to be an old and infirm woman, with the view, it is said, of buying peace and without any intention to recognize any right in Eliza Bowen, entered into negotiations with one David Bowen, the husband of Eliza Bowen, and assumed to have been his wife's agent; the result of which was an agreement by the complainant with David Bowen for the payment of the sum of $410 for the note of $800, which has been mentioned, and that the note should be delivered to the complainant and the deed of trust cancelled. The note was in the hands of the defendant Duncanson, who was acting in some way for Eliza Bowen. To him the agreed sum of $410 was paid on behalf of the complainant; and the note was surrendered to her or her agent. The note for $200, it appears, had already been taken up by her or for her account. The two notes were then presented to the trustees in the deed of trust, the defendants Stickney and Williamson; and demand was made upon them for the execution by them of a deed of release of the trust. This they declined to do, on the ground that the note for $800 had not been indorsed by Eliza Bowen.

The note was thereupon returned to Duncanson for the indorsement of Eliza Bowen; but this she refused to give. Both the note and the money remained in Duncanson's hands until after the institution of this suit. Demand, it is alleged, was frequently made upon him either to procure the indorsement or to return the money; but he failed to do either. The testimony, however, shows that Duncanson's action in the matter was fair and honorable; and upon the rendition of the decree in this cause he paid the money into court, where it yet remains.

The prayer of the bill is for a decree to direct the trustees to release the deed of trust in question, and for the payment

by the defendant Duncanson of the $410 to the complainant. And the bill also contains the prayer for general relief.

The defendants, Stickney, Williamson and Duncanson, answered the bill, substantially admitting the truth of such facts therein stated as were within their knowledge. At first no answer was made by Eliza Bowen, and there was a decree *pro confesso* against her, subsequently made final; but afterwards this decree was vacated, and she was permitted to answer.

In her answer she denied the complainant's title; denied that Duncanson was her agent; averred that he held the note only for safe keeping, and that the note had been given by Ida S. Bowman in part payment for the property in question, which she (Eliza Bowen) had conveyed to her, claiming to be the owner of an undivided one-half of it as one of the two heirs-at-law of one Joseph Lee, a free colored man, who had lived on the premises from 1837 to 1862, when his house was burned down. It is admitted that Lee had no title to the property; but it is claimed that there was an agreement between him and a former owner, George Bomford, for a conveyance.

Testimony was taken by both parties. From this it appears that the property had once belonged to George Bomford, who had a good record title thereto; that Bomford, in 1847, had executed a deed of this and other property to J. B. H. Smith, in trust to convey it in parcels to such persons as might be entitled; that Eliza Bowen and her sister Frances Clay, claiming to be the heirs-at-law of Joseph Lee, had, in 1872, instituted Equity cause No. 2759, in the Supreme Court of the District of Columbia, against J. B. H. Smith to enforce the alleged agreement between their father and Bomford, that in this suit after contest and proof, they had been defeated, and their bill dismissed by decree dated June 26, 1876; that the title of the heirs of Bomford had become vested in the complainant; that there had been a release of the deed of trust to J. B. H. Smith; and that the complainant had been in possession of the property since 1865. The

testimony also showed the transaction in regard to the negotiations between the complainant, David Bowen, and Duncanson to have been substantially as stated. It may be added that there is proof tending to show that Eliza Bowen's mother was a slave.

Upon these pleadings and testimony, the Supreme Court of the District of Columbia, in special term, rendered a decree on the 18th day of May, 1892, by which it was ordered that the complainant should, on or before June 6, 1892, pay to Stickney and Williamson, trustees, or pay into court, the sum of $800, the amount of the note in controversy, with interest thereon to the last mentioned day, less the $410 in the hands of Duncanson; and that Duncanson should bring this sum into court within five days; and that, upon such payment by the complainant, said trustees should convey to her the property mentioned in the bill, free and clear of all claims of the defendants. And it was further ordered by the decree that any claims of the trustees for compensation, or of Duncanson in regard to the $410, should be reserved for further order; that the residue of the money should be paid to Eliza Bowen; and that the complainant should pay the costs of the suit.

From this decree the complainant appealed to the General Term, and that appeal is now before this court under the law.

*Mr. A. A. Birney* and *Mr. James H. Smith* for the appellant.

THERE WAS no appearance for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

There is no opinion filed in this cause by the justice holding the special term; and we are not advised upon what grounds he based his decision. We cannot even conjecture from anything we find in the record, what those grounds were. We are compelled to think that he must have mis-

taken the facts in the case; for, in our opinion, the decree is not justified either by the pleadings or the testimony.

The bill of complaint is very defective. If the printed record contains a correct copy of it, as it purports to do, the description of the property is too vague and indefinite to form the basis of any relief. It is simply stated that the complainant was the owner of "part of lot seven (7), in square 214"; but of what part we are not told; and lot seven was evidently divided into several parts. Muniments of title ought not to be subjected to the strain of loose allegations of this character. But possibly this defect may be regarded as cured by the deed introduced in evidence in the cause, and which contains an accurate description.

The main purpose of the bill is to remove what is supposed to be a cloud upon the complainant's title. But the bill fails to set forth the existence of any such cloud, or of anything that in law or equity is regarded as amounting to a cloud upon title. A recent writer on legal subjects has given a description or definition of a cloud upon title, which we regard as substantially correct. He states that a cloud on title is " an outstanding claim or incumbrance on real estate, which, if valid, would affect or impair the title of the owner of a particular estate, and which apparently and on its face has that effect, but which can be shown by extrinsic evidence to be invalid or inapplicable to the estate in question. A conveyance, mortgage, judgment, tax levy, &c., may all in proper cases, constitute a cloud on title." Black's Law Dictionary, title, Cloud on Title.

In the case of *Hannewinkle* v. *Georgetown*, 15 Wall., 547, the Supreme Court of the United States, by Mr. Justice Hunt, said: " It has long been held that there exists no cloud upon the title which justifies the interference of a court of equity, where the proceedings are void upon their face; that is, the same record which must be introduced to establish the title claimed will show that there is no title." And in the case of *Peirsoll* v. *Elliott*, 6 Peters, 95, the same court, by Chief Justice Marshall, said: " The court is well satisfied that

this would be a proper case for a decree according to the prayer of the bill, if the defectiveness of the conveyance was not apparent on its face, but was to be proved by extrinsic testimony. The doubt respecting the propriety of the interference of a court of equity, is produced by the fact that the deed is void upon its face; and has been declared to be void by this court. It is therefore an unimportant paper, which cannot avail its possessor."

In the case of *Hamilton* v. *Cummings*, 1 Johns. Ch., 517, Chancellor Kent expresses the view that a court of equity might entertain jurisdiction to decree the cancellation of an instrument void on its face; but the statement confessedly was not required in the case before him; and it has been disapproved by the Supreme Court of the United States in the case of *Peirsoll* v. *Elliott*, above cited. Story, in his Equity Jurisprudence, rather leans to the opinion expressed by Chancellor Kent, in the case of *Hamilton* v. *Cummings*; but is forced to admit the limitation upon it by the great majority of the authorities. Eq. Jurisprudence, Secs. 699, 700, 700*a*, and notes to Section 700.

In the case of *Nickerson* v. *Loud,* 115 Mass., 94, in which a person, who was a stranger to the title, caused a paper to be recorded which set forth some claim to the property, the Supreme Court of Massachusetts, by Gray, Chief Justice, citing and following the decision in *Peirsoll* v. *Elliott*, said: " In order to induce a court of equity to order a writing to be cancelled or surrendered, as constituting a cloud upon title, it must at least be an instrument which upon its face is, or with the aid of extrinsic facts, may be, some evidence of a right adverse to the plaintiffs." And in the course of the same case it was suggested by Wells, Justice, that there never had been a case where a deed between strangers had been held to be a cloud on title.

Under the influence of the authorities on the subject, therefore, we are constrained to hold that the complainant in the present suit has not stated in her bill of complaint a case of which equity can or ought to take cognizance. Her allega-

tion simply is that Ida S. Bowman, a stranger to the title, executed a deed of trust of the property to trustees to secure a pretended debt to Eliza Bowen, also a total stranger to the title; and, as if to emphasize the difficulty, she adds that neither Ida S. Bowman nor Eliza Bowen has any right, title or interest whatever, legal or equitable, in the property. Such a deed, so executed, is utterly void as against the complainant, and cannot, in the legal sense of the term, constitute a cloud upon the complainant's title.

It seems to have done so however, as a matter of fact; and the case would seem to be one to justify the animadversion of Kent and Story in reference to the refusal of courts of equity to intervene in such cases. But after all, as suggested by Story in the passage from his work on Equity Jurisprudence, heretofore cited, the complainant's purpose is sufficiently subserved by the declaration of the nullity of the alleged deed and the dismissal of the bill on that account, when the reason of the dismissal is stated, as it should be, in the decree of the court.

It may be added here that the answer of the defendant Eliza Bowen and the testimony in the cause make out a better case of cloud on title than is alleged in the complainant's bill. But the record that is introduced shows conclusively that Eliza Bowen never had any right or title to the property in question; and that the claim which she sets up in her answer had been adjudicated by the final decree of the Supreme Court of the District of Columbia in a suit instituted for the express purpose of enforcing it, and had been shown to be baseless and unfounded. The same records, into which her deed has been improperly introduced, suffice to show the nullity of it.

It may also be added that, if a sufficient case of cloud on title had been shown in the bill, it is manifest that Ida S. Bowman should have been made a party to the suit; and that, without making her a party, it would have been improper to proceed against the claim of Eliza Bowen.

From what we have stated, it is entirely clear that the court in special term was wholly in error in decreeing peremptorily,

as it did, and not merely as a condition precedent to relief, as it might more properly have done, that the complainant should pay over to the defendant, Eliza Bowen, or bring into court for her, the sum of $800, less the amount in the hands of the defendant Duncanson. It was error to decree that the complainant should pay any sum whatever. It was likewise error to require the complainant to pay the costs of the suit; for there is nothing whatever in the record to justify such a requirement.

The decree of the special term must, therefore, be reversed; and the cause must be remanded to that court, with directions to enter a decree dismissing the bill of complaint, for the reason to be specified in the decree, that the deed alleged in the bill of complaint to be a cloud upon the complainant's title is void on its face, and constitutes no such cloud. The decree also should direct that the sum of $410 in the registry of the court should be paid over to the complainant, Nancy Welden, to whom it rightfully belongs.

Also, inasmuch as the defendant Eliza Bowen plainly sought to cloud the complainant's title, and the proceedings in this cause were occasioned by her action, she should be charged with a reasonable share of the costs of the suit, notwithstanding the dismissal of the complainant's bill. And, therefore, the costs, excepting the costs of this appeal, which must be charged entirely against the defendant Eliza Bowen, will be apportioned equally between the said defendant and the complainant.

The cause is, therefore, remanded to the Supreme Court of the District of Columbia, in special term, with directions to enter a decree in accordance with this opinion.

*Decree reversed and cause remanded.*